JAMES MAKIN *versus* THE INSTITUTION FOR SAVINGS.

Money deposited with a Saving institution, to be repaid at certain times prescribed by the institution, may on demand in pursuance with the by-laws, be sued for in assumpsit — and it affords no defence that the institution, having in accordance with its by-laws invested its funds in stocks which have depreciated, is unable to repay the whole amount received.

Whether a Court of Equity on a bill brought by the institution against the several depositors, would not apportion the loss among them in proportion to their deposits — *quære*.

EXCEPTIONS from the District Court, WHITMAN J. presiding.

This was an action of assumpsit on an account annexed, with the usual money counts. The writ was dated July 26, 1839.

The plaintiff offered the act of incorporation of the defendants, passed June 11, 1819, by which they were made a body corporate with power to sue and be sued, make by-laws, &c. — likewise the by-laws of the institution adopted agreeably to the act of incorporation; also the deposit or memorandum books in which were duly entered the various sums of money deposited by him or for his use at different times, for the recovery of which this action was brought, and by which, it appeared, that the sums so deposited were to be repaid upon demand made according to the by-laws.

By the by-laws of the institution, the money received was to be invested in stocks, or in loans well secured.

The plaintiff then offered to prove that on the 17th day of June, 1839, he notified Charles E. Barrett, Treasurer of said institution, that he intended to call for and draw out the money by him deposited on the third Wednesday of July then next following — that on the 17th day of July, 1839, being the third Wednesday of said month, he presented said memorandum or deposite book to the Treasurer, at the office of the institution, and demanded the money due thereon, which the treasurer refused to pay. The demand was in accordance with the by-laws of the institution.

Upon this evidence and statement of the plaintiff's claim Whitman J. who presided at the trial, directed a nonsuit, to which opinion and direction exceptions were filed.

*Codman & Fox*, in support of the exceptions, contended, that by making the deposit the relation of debtor and creditor was created — and that the rights of the depositor did not depend upon the successful investment of the money loaned to the institution — and that whether or not the trustees had faithfully executed their trust, was not to be considered in this suit. By the terms of the deposit, the plaintiff had a right to withdraw by giving notice — and having done that, this action will lie. *Moses* v. *Mc Farlane*, 2 Burr. 1012. This is his only remedy. *Ashley* v. *Arms*, 4 Pick. 93; *Wright* v. *Butler*, 3 Penn. 398. No equity powers existed at the time of the in-

corporation of this institution — this was then the remedy and is now. *Given* v. *Simpson,* 5 Greenl. 306.

*Longfellow & Daveis,* for the defendants, argued that the corporators are only trustees. The relation of trustee and *cestui que trust* exists between the parties. By the by-laws of the institution the money was to be invested in stocks. The trustees did so invest, and it was their duty so to do. The stocks belonged to the *cestui que trust,* not to the trustee — and if, by depreciation or otherwise, a loss had been made, that loss must be borne equally by those interested. If this action were to be sustained, the plaintiff will receive full payment — while those who have delayed making their claim, will receive nothing.

The proper remedy is in a Court of Equity, where alone the several rights of all will be protected. The court has jurisdiction by St. 1830, ch. 462; 1 Story on Eq. 534; Collier on Partnership, 24, 143, 626.

The opinion of the Court was delivered by

SHEPLEY J. — This corporation was designed to afford assistance to those willing to preserve and invest small gains until needed, or until their accumulation would authorize a more permanent investment. Its purpose was a charitable one. It did not propose to enrich itself by any favorable result of its operations. In the administration of this charity it undertook to invest the money deposited, in public or private stocks, or to loan it on a pledge of them in preference to other loans. The case finds, that it was so invested. It is said, that serious losses have happened by a fall in the price of the stocks purchased, so that the corporation has become unable to pay the several depositors the money received of them. *It is insisted,* that the corporation has discharged its duty faithfully; has invested the money in the manner it engaged to do; that a depositor cannot therefore maintain an action at law to recover his money; that he must take his share of the stocks, or resort to equity for relief. The institution is regarded in the argument as sustaining the relation of a trustee to the depositor

and it is urged, that it should be dealt with as such. This argument overlooks the consideration, that the corporation not only undertook to receive and to invest the money in stocks, but also to repay it at certain times prescribed by itself. It assumed, that it would have the ability to do this; expecting, doubtless, that the losses would be made up from the excess of interest beyond that, which it promised absolutely to pay. In this it may have been disappointed; and may find itself, like individuals, assuming responsibilities from a confidence reposed in the value of stocks or other property, unable to perform what it has promised. Its erroneous judgment of what it would accomplish for the benefit of the depositors, and the unexpected losses suffered, cannot in law excuse it from the performance of promises made to them. It assumed other and greater liabilities than those properly appertaining to a trustee. A trustee undertakes to act with faithfulness and prudence in preserving and investing property, and to deliver it over, or the proceeds of it, as required. He does not assume to bear the risk of losses. This corporation did, in effect, assume the risk of loss. For it undertook at all events to pay a stipulated interest, and to repay the principal. It may be very true, that it would be more equitable to apportion the losses among all the depositors, instead of allowing one to obtain his money without loss, and thereby subject another to an additional or a total loss. Whether such a result could or not be avoided by some proceeding on the part of the corporation, is not now presented for consideration.

Our law allows the vigilant creditor to interpose by attachment, and to obtain, if he can, his whole debt; leaving, it may be, those less vigilant or fortunate, to an entire loss. The case as presented does not exhibit any sufficient ground of defence.

*Exceptions sustained, and new trial granted.*